Vivek Kothari (OSB No. 182089)
vivek@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

Stephen A. Teller, WSBA #23372
Teller Law
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969

*Attorneys for Plaintiff-Relator*

FILED13 AUG '25 16:23USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA *ex rel.* DANIEL FOSTER,

Plaintiff,

v.

CHAUCER FOODS, INC, an Oregon corporation, JSL FOODS, INC., a California corporation, CRUNCHIE'S NATURAL FOOD COMPANY, LLC., a California corporation, NAGATANIEN HOLDINGS Co. Ltd, a Japan corporation, and affiliated companies,

Defendants.

Case No. 3:25-cv-1440-YY

**DEMAND FOR JURY TRIAL**

**FILED UNDER SEAL AND EX PARTE PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PACER**

#113192

## Table of Contents


Introduction ..... 1

Jurisdiction and Venue ..... 2

The Parties ..... 3

Additional Background on Defendant and their Affiliates ..... 4

Legal Background ..... 5

A. The False Claims Act ..... 5

B. The Paycheck Protection Program ..... 6

Background on Defendants First Draw PPP Loan ..... 10

A. The JSL Foods First Draw PPP Loan ..... 10

B. Chaucer Foods, Inc. First Draw PPP Loan ..... 11

C. Crunchies Natural Food Company, LLC First Draw PPP Loan ..... 11

Defendants Did Not Satisfy Any of Three Eligibility Standards for First Draw Loans ..... 12

A. JSL Foods, Chaucer Foods, and Crunchies Natural Food Employed More Than 500 People ..... 12

B. JSL Foods, Chaucer Foods, and Crunchies Natural Food Did Not Satisfy The SBA's Small Business Size Standard Corresponding To Its Primary Industry ..... 12

C. JSL Foods, Chaucer Foods, and Crunchies Natural Food Did Not Satisfy The SBA's Alternative Size Standard ..... 13

Fraud Allegations ..... 13

COUNT I: False Claims Act, 31 U.S.C. § 3729(a)(1)(A) ..... 15

COUNT II: False Claims Act, 31 U.S.C. § 3729(a)(1)(B) ..... 15

Prayer for Relief ..... 15

Request for Trial by Jury ..... 17

# FALSE CLAIMS ACT COMPLAINT

Daniel Foster ("Relator") brings this action as a *qui tam* relator on behalf of the United States against Defendants Chaucer Foods, Inc (Chaucer Foods), JSL Foods, Inc. (JSL Foods), Crunchie's Natural Food Company LLC (Crunchie's Natural Food Company), and Nagatanien Holdings Co. Ltd (Nagatanien) pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729-33, to recover damages, penalties, attorney fees and costs, and other relief.

## Introduction

1. In April 2020, three U.S. subsidiaries of Nagatanien Holdings Co., Ltd., a Tokyo-based global food manufacturer—JSL Foods, Inc., Chaucer Foods, Inc., and Crunchies Natural Food Company, LLC—received first-draw Paycheck Protection Program (PPP) loans totaling $5,384,350.

2. The Defendant subsidiaries fraudulently failed to account for their affiliations and falsely certified their eligibility for PPP loans. When their submitted their PPP loans applications, Defendants certified that, including affiliates, they had "no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry," and that they were eligible for PPP loans under the rules in effect at the time.

3. First, Defendants together with their affiliates had more than 500 employees in the United States alone. At the time of their loan applications, US subsidiaries of Nagatanien employed at least 647 workers in the United States, exceeding the 500-employee standard for first-draw PPP borrowers. Second, including their affiliates, the Defendant subsidiaries had over 2,500 employees, surpassing the 750-employee SBA size standard for their industry, Dried and Dehydrated Food Manufacturing (NAICS 311423), under 13 C.F.R. 121.201.

4. The subsidiaries also failed to qualify under the SBA's alternative size standard. Nagatanien's net worth was approximately ¥32.80 billion ($307.28 million) in 2019, far exceeding

the $15 million limit required for eligibility.

5. Including loan forgiveness of $5,348,426 and lender processing fees of $86,083 paid by the SBA, the total loss to the United States government was $5,434,509.

6. By falsely certifying their eligibility, JSL Foods, Inc., Chaucer Foods, Inc., and Crunchies Natural Food Company, LLC caused a significant loss to the United States and American taxpayers, while depriving genuine small businesses of critical PPP funds during a national emergency. Their actions provided an unfair advantage over competitors who honestly assessed their PPP eligibility.

7. No allegation in this complaint is based solely on a public disclosure of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, administrative, General Accountability Office, or other Government report, hearing, audit, or investigation; or from the "news media." Relator is an original source, having conducted independent investigation using Japanese-language financial statements and other non-public sources. To the extent there has been prior disclosure, Relator caused that disclosure through his report to the government and remains an original source.

8. This action is filed under seal pursuant to the requirements of the False Claims Act, 31 U.S.C. § 3730(b)(2).

## Jurisdiction and Venue

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732, which confers jurisdiction over actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

10. This Court may exercise personal jurisdiction over Defendant, and venue is appropriate in this Court, under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Defendant Chaucer Foods resides in this District and transacts business in this District.

## The Parties

11. Defendants JSL Foods, Inc., Chaucer Foods, Inc., and Crunchies Natural Food Company, LLC are U.S. subsidiaries of Nagatanien Holdings Co., Ltd., a corporation organized under the laws of Japan with its principal place of business at 2-36-1, Nishi-Shimbashi, Minato-ku, Tokyo, Japan.

12. Nagatanien Holdings Co., Ltd. is a global food conglomerate specializing in instant noodles, freeze-dried foods, cream puffs, and takeout sushi. It controlled and owned a majority of the Defendant subsidiaries through direct and indirect holdings, including a 50.000061% interest in Main On Foods Corp. (which fully owns JSL Foods, Inc.), a 60% interest in Chaucer Foods, Inc. through Broomco (3554) Ltd., and a 60% interest in Crunchies Natural Food Company, LLC, through Broomco (3554) Ltd.

13. Nagatanien Holdings Co., Ltd. and its affiliated subsidiaries, including Defendants, employed approximately 2,544 people worldwide as of March 2020 as reported in Japanese-language financial statements filed with Japan's Financial Services Agency. According to their PPP applications, the three US Defendants had 565 US employees. Including three additional US subsidiaries of Nagtanien that sought PPP loans, they employed 647 or more workers in the United States during the relevant time period.

14. Relator is a dual citizen of the United States and Germany, residing in Berlin, Germany. He holds certificates in forensic accounting, fraud examination, and digital forensics. Relator first identified PPP fraud through an organization he was affiliated with and subsequently used his investigative skills to uncover the fraud alleged herein, relying primarily on Nagatanien's Japanese-language financial statements and the UK financial statements of Broomco to confirm Defendants' affiliation with Nagatanien and the corporate group's true size.

**Additional Background on Defendant and their Affiliates**

15. JSL Foods, Inc., Chaucer Foods, Inc., and Crunchies Natural Food Company, LLC are U.S. subsidiaries of Nagatanien Holdings Co., Ltd., a Tokyo-based conglomerate specializing in the manufacture and sale of food products, including instant noodles, freeze-dried foods, cream puffs, and takeout sushi.

16. JSL Foods, Inc. has its principal place of business at 3550 Pasadena Ave, Los Angeles, CA 90031-1946.

17. Chaucer Foods, Inc. is located at 2238 Yew Street, Forest Grove, OR 97116-2262.

18. Crunchies Natural Food Company, LLC operates from 23586 Calabasas Road Suite 106, Calabasas, CA 91302-1304.

19. Nagatanien Holdings Co., Ltd. is headquartered at 2-36-1, Nishi-Shimbashi, Minato-ku, Tokyo, Japan, and controls its U.S. subsidiaries through majority ownership, including a 50.000061% interest in Main On Foods Corp. (fully owning JSL Foods, Inc.), a 60% interest in Chaucer Foods, Inc. via Broomco (3554) Ltd. (with full ownership acquired by May 26, 2020), and a 60% interest in Crunchies Natural Food Company, LLC, via Broomco (3554) Ltd.

20. According to its financial statements and other documents, Nagatanien additionally has majority or full ownership of the US companies Nagatanien USA, Inc., Muginoho International, Inc., Main On Foods Corp, and Nagatanien RS Foods LLC, and Nikko Enterprise Corporation.

21. As of March 31, 2019, Nagatanien had 2,506 employees worldwide, increasing to 2,544 by March 31, 2020, as reported in its Japanese-language financial statements. As stated on their PPP applications, Nagatanien's US subsidiaries employed the following number of workers: JSL Foods (458), Chaucer Foods (95), Crunchie's Natural Food Company (12), Nagatanien RS Foods

(42), Jin's Dining (31), and Nikko Enterprise Corporation (9).[1] These U.S. subsidiaries thus employed at least 647 workers as indicated in their PPP loan applications.

22. This figure does not include employees associated with Muginoho International, Inc, the US arm of Beard Papa's Fresh Baked Japanese Cream Puffs, which did not take a PPP loan. Muginoho operates a franchise manangement business for Beard Papa's and also directly owned several Beard Papa's locations in 2019-2020.

23. Nagatanien has approximately 39 subsidiaries worldwide, including Sweet Meal Co., Ltd. in South Korea, Shanghai Nagatanien Food Trading Co., Ltd., Chaucer Foods UK Ltd., and Chaucer Foods SAS in France. Nagatanien and its consolidated subsidiaries employ approximately 2,500 individuals globally.

24. Defendants and their affiliates may have further employed additional workers not listed on their PPP applications through part-time arrangements and staffing agencies. Defendant's foreign affiliates may also have employed US workers not identified here.

25. In summary, Defendants falsely certified their eligibility as small businesses to receive PPP funds. Although they may appear to be small individually, in reality they are part of a much larger corporate group. Had their lenders or the SBA been aware of Defendant's actual size and the scope of their business operations, their loans would not have been approved.

## **Legal Background**

### A. The False Claims Act

26. The False Claims Act provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

[1] Nagatanien RS Foods and Jin's Dining USA appear to operate restaurants and were likely eligible for a hospitality industry affiliation waiver (applicable to their loan applications only). SBA data indicates that Nikko Enterprise Corporation has not received forgiveness of its loan. Therefore, these entities are not named as defendants here.

> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $13,508 and not more than $27,018, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

27. For purposes of the False Claims Act, "the terms 'knowing' and 'knowingly' mean that a person, with respect to information[,] (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

## B. The Paycheck Protection Program

28. In March 2020, through the CARES Act, Pub. Law 116–136, Congress established the PPP to provide economic relief for small businesses during the coronavirus pandemic.

29. Under the first round of the PPP, an eligible business could apply for a loan of up to 2.5 times its average monthly payroll during 2019, subject to a maximum amount of $10 million. *See* 15 U.S.C. § 636(a)(36)(E); *see also* Small Business Administration ("SBA") Form 2483, Instructions.

30. An applicant for a first draw PPP loan could qualify as an eligible business under any of three standards:

> (1) having an average of no more than 500 employees during 2019 or during the 12 months prior to applying for a first draw PPP loan, *see* 15 U.S.C. § 636(a)(36)(D)(i)(I) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 14 (April 6, 2020);
>
> (2) the SBA employee-based or revenue-based size standard corresponding to the business's primary industry, *see* 15 U.S.C. § 636(a)(36)(D)(i)(II) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2; or
>
> (3) the SBA's alternative size standard, which provided that the business must have (a) a maximum tangible net worth of not more than $15 million, *and* (b) average net income after

tax of not more than $5 million for the business's two full preceding fiscal years as of March 27, 2020, *see* 86 Fed. Reg. 15083, 15085 n.5 (Mar. 22, 2021) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2.

31. Under each of these eligibility standards, the law required the business to include its affiliates in assessing whether the business met the standard. *See* 15 U.S.C. § 636(a)(36)(D)(iv). The affiliation rule in effect at the time, 13 C.F.R. § 121.301(f) (2019) (*available at* 81 Fed. Reg. 41423, 41428 (June 27, 2016)), provided that "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." The rule further elaborated that affiliation could arise under various circumstances, including:

> Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.
>
> Affiliation based on management. Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one o[r] more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

*Id.*; *see also* SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (April 3, 2020).

32. To apply for a first draw PPP loan, a business would submit an SBA Form 2483 to an authorized lender or complete an online application mirroring this form. The application form

required a potential borrower to list its number of employees, including those of affiliates. Potential borrowers were also required to disclose "all owners of 20% or more of the equity of the Applicant," and whether the "the Applicant or any owner of the Applicant [is] an owner of any other business, or have common management with, any other business."

33. Form 2483 required an applicant to certify that it had "no more than the greater of 500 employees, or if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry." Under 13 C.F.R. § 121.201, applicants were instructed to include "[the] concern and its affiliates" to determine eligibility with greater than 500 employees under the industry size standard.

> **§ 121.201 What size standards has SBA identified by North American Industry Classification System codes?**
>
> The size standards described in this section apply to all SBA programs unless otherwise specified in this part. The size standards themselves are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small.

34. On a supplementary webpage explaining common terms relevant to the industry size standards, as of and prior to April 1, 2020, the SBA communicated the following definition of "affiliates":

> **Affiliates**: You must include the employees or receipts of all affiliates when determining the size of a business. Affiliation with another business is based on the power to control, whether exercised or not. The power to control exists when an external party has 50 percent or more ownership. It may also exist with considerably less than 50 percent ownership by contractual arrangement or when one or more parties own a large share compared to other parties. Check the SBA's compliance guide for size and affiliation for more detailed information.

35. The SBA further communicated that the affiliation rules must be applied under the industry and alternative size standards through other published guidance. See PPP Loans Frequently Asked Questions, Question 5 (April 6, 2020):

> 5. Question: Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?

> Answer: Yes. Borrowers must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation. A borrower must certify on the Borrower Application Form that the borrower is eligible to receive a PPP loan, and that certification means that the borrower is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), meets the applicable SBA employee-based or revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2).

36. Notably, when the PPP first came into effect, SBA issued guidance that "[y]ou are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is *in the United States*." 85 Fed. Reg. 20811, 20812 (April 15, 2020) (emphasis added). On May 5, 2020, the SBA clarified that a PPP "applicant must count all of its employees and the employees of its U.S. *and foreign affiliates*." 85 Fed. Reg. 30835, 30836 (May 21, 2020).

37. PPP applicants were always advised to include foreign and domestic affiliates, including domestic affiliates as they applied to the 500-employee standard. As an exercise of enforcement discretion, the SBA declared that it would not find any borrower that applied for a PPP loan prior to May 5, 2020 to be ineligible based on the borrower's exclusion of non-U.S employees from the borrower's calculation of its employee headcount if the borrower *(together with its affiliates)* had no more than 500 employees whose principal place of residence is in the United States. (emphasis added) 85 Fed. Reg. 30835, 30836 (May 21, 2020).

38. Thus, a PPP borrower qualifying under the 500-employee standard received a safe harbor from the SBA so long as it, *combined with affiliates*, employed 500 or fewer employees in the United States.

39. This waiver did not apply to applicants who, including any affiliates, had greater than 500 employees in the United States, including affiliates. These applicants could only qualify for the PPP under the size standard for their industry listed in 13 C.F.R. § 121.201 or the separate alternative size standard. Here, the relevant regulations made clear that any affiliates must be included with no geographic limitations.

40. In other words, a US subsidiary of a foreign corporation, through the SBA safe harbor, could generally receive a first-draw loan prior to May 5, 2020, so long as its total affiliated US headcount remained under 500 employees. If the US subsidiary had other American affiliates and their combined U.S. headcount exceeded 500 employees, the subsidiary would not qualify for PPP funding under the SBA's 500-employee size standard. In that case, it could only seek eligibility under either the applicable industry-based size standard or the alternative size standard—both of which require the inclusion of foreign affiliates and do not fall within the SBA's safe harbor.

41. The statutes creating the PPP provided that SBA would reimburse PPP lenders for processing loans at specified rates. The rate for loans of $350,000 or less was 5 percent; the rate for loans of more than $350,000 but less than $2,000,000 was 3 percent; and the rate for loans of $2 million or more was 1 percent, *see* 15 U.S.C. § 636(a)(36)(P)(i)(I), § 636(a)(36)(P)(i)(II)(bb).

42. The PPP also provided for full forgiveness of a loan so long as the borrower used the loan proceeds in accordance with the PPP rules and did not reduce the number of its employees. *See* 15 U.S.C. § 636m; SBA, *Frequently Asked Questions (FAQs) on PPP Loan Forgiveness* (Oct. 13, 2020). To the extent a borrower reduced the average number of its employees in the months after receiving the loan, the PPP created a formula for reducing the loan forgiveness amount accordingly. *See* 15 U.S.C. § 636m(d)(2).

**<u>Background on Defendants First Draw PPP Loan</u>**

**A. The JSL Foods First Draw PPP Loan**

43. SBA data shows that on April 14, 2020, JSL Foods, Inc. was approved for a first-draw PPP loan of $3,987,100.00 through Manufacturers Bank (loan number 6894317108).

44. JSL Foods, Inc. listed 458 jobs on its application and an address of 3550 Pasadena Ave, Los Angeles, CA 90031-1946.

45. JSL Foods, Inc. classified itself under NAICS code 311911 (Roasted Nuts and

Peanut Butter Manufacturing), which has a size standard of 750 employees for first-draw loans. However, JSL Foods is engaged in the freeze-dried and baked goods industry and does not appear to engage in peanut butter manufacturing; the correct NAICS code for its business is 311423 (Dried and Dehydrated Food Manufacturing), which has the same size standard of 750 employees.

46. On June 15, 2021, JSL Foods, Inc. applied for loan forgiveness. The SBA granted forgiveness of $4,033,505.41 on July 17, 2021.

47. The SBA also paid Manufacturers Bank a lender processing fee of $39,871.00 in connection with the loan.

**B. Chaucer Foods, Inc. First Draw PPP Loan**

48. On April 9, 2020, SBA data shows that Chaucer Foods, Inc. was approved for a first-draw PPP loan of $1,182,500.00 through Vibrant Credit Union (loan number 8859287007).

49. Chaucer Foods, Inc. listed 95 jobs on its application and an address of 2238 Yew Street, Forest Grove, OR 97116-2262.

50. Chaucer Foods, Inc. classified itself under NAICS code 311421 (Fruit and Vegetable Canning), which has a size standard of 1,000 employees for first-draw loans. However, like its affiliates, Chaucer Foods is engaged in the freeze-dried and baked goods industry and does not appear to engage in canning; the correct NAICS code for its business is 311423 (Dried and Dehydrated Food Manufacturing), which has a size standard of 750 employees for first-draw loans.

51. On January 28, 2021, Chaucer Foods, Inc. applied for loan forgiveness. The SBA granted forgiveness of $1,191,603.63 on February 11, 2021.

52. The SBA also paid Vibrant Credit Union a lender processing fee of $35,475.00 in connection with the loan.

**C. Crunchies Natural Food Company, LLC First Draw PPP Loan**

53. On April 13, 2020, SBA data shows that Crunchies Natural Food Company, LLC

was approved for a first-draw PPP loan of $214,750.00 through Vibrant Credit Union (loan number 4253217103).

54. Crunchies Natural Food Company, LLC listed 12 jobs on its application and an address of 23586 Calabasas Road Suite 106, Calabasas, CA 91302-1304.

55. Crunchies Natural Food Company, LLC classified itself under NAICS code 311423 (Dried and Dehydrated Food Manufacturing), which has a size standard of 750 employees for first-draw loans.

56. On November 3, 2020, Crunchies Natural Food Company, LLC applied for loan forgiveness. The SBA granted forgiveness of $215,885.53 on December 12, 2020.

57. The SBA also paid Vibrant Credit Union a lender processing fee of $10,737.50 in connection with the loan.

**Defendants Did Not Satisfy Any of Three Eligibility Standards for First Draw Loans**

**A. JSL Foods, Chaucer Foods, and Crunchies Natural Food Employed More Than 500 People**

58. As noted above, JSL Foods, Inc. reported 458 employees, Chaucer Foods, Inc. reported 95 employees, and Crunchies Natural Food Company, LLC reported 12 employees on their respective PPP loan applications, totaling at least 565 employees in the United States. Combined with other U.S. affiliates, Nagatanien Holdings Co., Ltd. employed at least 647 workers in the United States, as reported in their PPP applications. The Defendants were thus not eligible for PPP loans based on the 500-employee standard. They are not entitled to the SBA's enforcement variance for foreign affiliations because they collectively had more than 500 employees in the United States.

**B. JSL Foods, Chaucer Foods, and Crunchies Natural Food Did Not Satisfy The SBA's Small Business Size Standard Corresponding To Its Primary Industry**

59. During the relevant time period, the SBA Table of Small Business Size Standards provided that an entity engaged in "Dried and Dehydrated Food Manufacturing" (NAICS Code 311423) could qualify as a small business if it and its affiliates had no more than 750 employees. JSL Foods, Inc. and Crunchies Natural Food Company, LLC correctly identified their industry as NAICS 311423, but Chaucer Foods, Inc. misclassified itself under NAICS 311421 (Fruit and Vegetable Canning), which has a size standard of 1,000 employees. Regardless, Nagatanien Holdings Co., Ltd., including its affiliates, had over 2,500 employees worldwide in 2020, as reported in its Japanese-language financial statements. The Defendants did not qualify under the SBA small business size standard for their industry.

**C. JSL Foods, Chaucer Foods, and Crunchies Natural Food Did Not Satisfy The SBA's Alternative Size Standard**

60. According to the financial statements of Nagatanien Holdings Co., Ltd., the company had a total equity (net assets) of approximately ¥32.80 billion ($307.28 million) in 2019 and ¥33.92 billion ($317.86 million) in 2018. This far exceeds the maximum of $15 million allowed by the SBA under the alternative size standard, rendering the Defendants ineligible for PPP loans under this criterion.

**<u>Fraud Allegations</u>**

61. Defendants JSL Foods, Inc., Chaucer Foods, Inc., and Crunchies Natural Food Company, LLC did not qualify for the PPP loan program. As alleged above, the Defendants and their affiliates employed at least 647 workers in the United States. Including their foreign affiliates, Defendants had approximately 2,544 employees in 2020. The Defendants did not have an average of fewer than 500 employees during the relevant periods for the first-draw loans, nor did they meet the applicable industry size standard of 750 employees for NAICS code 311423 or the alternative size

standard, as the net assets of Nagatanien Holdings Co., Ltd. exceeded ¥32.80 billion ($307.28 million).

62. In their application for PPP loans, Defendants falsely certified the following:

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

63. Defendants had greater than 500 US employees in the United States and greater than the maximum number of employees established by the SBA for their industry. They were also not an eligible "small business" under the alternative size standard. These certifications were materially false, and knowingly made, as that term is defined by the False Claims Act.

64. Later, when Defendants applied for loan forgiveness, they falsely certified that the information provided in their applications and supporting documents was "true and correct in all material respects."

65. Defendants are reasonably expected to know that they are part of an international conglomerate and have affiliates. Their false certifications were material to the SBA and respective lenders' decisions to approve the loans. Had Defendants been transparent about their true number of employees, their loan applications and subsequent requests for loan forgiveness would not have been approved.

## COUNT I:

### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

66. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

67. Through the acts set forth above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment to SBA for first draw PPP loan and loan forgiveness to which they were not entitled.

68. By virtue of the false or fraudulent claims that Defendants knowingly made or presented, or caused to be made or presented, Defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT II:

### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)

69. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

70. Through the acts set forth above, Defendants knowingly made, used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by SBA for its PPP loans and loan forgiveness to which they were not entitled.

71. By virtue of the false records and statements Defendants made, used, or caused to be made or used, Defendants violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## Prayer for Relief

a) A judgment against Defendants in an amount equal to all damages due to the

Government, including treble damages, under the FCA;

b) A judgment against Defendants for all civil penalties due to the Government for Defendant' violations of the FCA;

c) That Relator recover from Defendants all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

d) That Relator recover from Defendants all reasonable attorneys' fees in bringing this action;

e) That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

f) That a trial by jury be held on all issues so triable;

g) An award of pre- and post-judgment interest; and

h) Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

(continued on next page)

## Request for Trial by Jury

Relator hereby requests a trial by jury.

Dated: August 13, 2025

Respectfully submitted,
By: *s/ Vivek Kothari*

Vivek Kothari (OSB No. 182089)
vivek@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

Stephen A. Teller
steve@stellerlaw.com
300 Lenora St. #1471
Seattle, WA 98121
Telephone: 206 324 8969

*Attorneys for Plaintiff Relator*

This Complaint will **not** be served on Defendants until ordered by the Court.